**James CLOSE, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

No. 00SC690.

Supreme Court of Colorado, En Banc.

May 28, 2002.

As Modified on Denial of Rehearing July 1, 2002.

David S. Kaplan, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

Ken Salazar, Attorney General, Laurie A. Booras, First Assistant Attorney General, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the opinion of the Court.

This case presents the issue of whether a criminal defendant who is sentenced pursuant to the crime of violence statute, section 16–11–309(1)(a), 6 C.R.S. (2001), is entitled, upon request, to a proportionality review of his sentence, and, if so, what is the proper scope of such proportionality review. The trial court declined to conduct a proportionality review of defendant Close's sixty-year sentence. The court of appeals affirmed. *People v. Close*, 22 P.3d 933, 939 (Colo.Ct. App.2000). Both courts based their conclusion on the fact that the sixty-year sentence was the mandatory minimum sentence under the statute, reasoning that courts are not authorized to conduct proportionality reviews of legislatively mandated penalties, particularly when the penalty imposed is the minimum under the statute. We disagree with the reasoning, but affirm on different grounds.

We conclude that the current law governing proportionality review does include a well-established principle of proportionality through the Eighth Amendment to the United States Constitution and that Close was entitled to an abbreviated proportionality review of his sentence. We find that neither the statutorily mandated nature of the crime of violence statute nor the fact that the sentence imposed in this case was the minimum under that statute precludes a sentencing court from conducting an abbreviated proportionality review. More specifically, we hold that, because of the risk of a dispropor-

tionate sentence under the crime of violence statute, a defendant sentenced under that statute is entitled, upon request, to an abbreviated proportionality review, regardless of whether he was sentenced to the minimum possible sentence under that statute.

However, although we hold that the denial of a proportionality review was erroneous, we affirm the sixty-year sentence. Our review of the record reveals that we are able to conduct the required proportionality review, which was requested by Close, without remand. Our abbreviated proportionality review reveals that Close's sentence is not grossly disproportionate. As a result, he is not entitled to an extended proportionality review and his sentence is affirmed.

After reviewing the relevant facts and procedure in this case, we then turn to the controlling United States Supreme Court cases and our own precedent in order to present the current, controlling legal framework of the proportionality principle. We discuss these cases at length because a similar issue regarding the proportionality principle is presented in the companion case to this case, *People v. Deroulet*, 22 P.3d 939 (Colo. Ct.App.2000), also issued today. In *Deroulet*, another panel of the court of appeals reached a conclusion regarding the availability of a proportionality review that conflicts with the court of appeals' decision in this case. More specifically, the court of appeals in this case concluded that Close, who was sentenced under the crime of violence statute, was not entitled to a proportionality review, while the *Deroulet* court concluded that defendant Deroulet, who was sentenced under the habitual criminal statute, as amended in 1993, was entitled to an proportionality review of his sentence. *Compare Close*, 22 P.3d at 939 *with Deroulet*, 22 P.3d at 946. Although these cases involve two different statutes, the issues are sufficiently similar, namely under what circumstances a defendant is entitled to a proportionality review, that we consider these two cases to represent a split in authority. Thus, we present a detailed discussion of controlling precedent in order to fully explain our holdings in these two companion cases.

This framework enables us to address the issues of which defendants are entitled to a proportionality review, what is at issue in a proportionality review, and what the procedural mechanisms are for such review. More specifically, our review of Supreme Court precedent reveals that a proportionality review is permitted for sentences to a term of years and to statutorily mandated sentences. This precedent also defines two types of procedural mechanisms through which courts may conduct proportionality reviews, namely abbreviated proportionality reviews and extended proportionality reviews. Our review of our own precedent illustrates that we have closely followed the Supreme Court in developing our own body of proportionality review law. In addition, we have, specific to Colorado law, recognized some crimes as grave or serious. Utilizing the proportionality review framework that we discern from the United States Supreme Court as well as from our own precedent, we proceed to engage in an abbreviated proportionality review of Close's sentences and conclude that each is constitutionally proportionate.

## I. Facts and Procedure

On the evening of October 6, 1990, Close, along with his brother and two friends, vandalized and stole speakers from a car. The four teenagers then surrounded a group of six Japanese students from Teikyo Loretto Heights University in Denver, who were sitting in a nearby park. The four teenagers struck the students with sticks and bats. One of the teenagers demanded that the students produce identification and money. The attack stopped when one of the students fled and the others followed. Property was taken from three students and included a package of cigarettes, two rings, $10, and a wallet.

Close was convicted of one count each of criminal mischief, first-degree criminal trespass, misdemeanor theft, and conspiracy to commit criminal mischief and theft; three counts each of aggravated robbery and attempted aggravated robbery; six counts each of second-degree assault and ethnic intimidation; and one count of conspiracy to commit ethnic intimidation. The trial court sentenced Close to cumulative minimum sentences totaling sixty years of imprisonment.[1]

Close filed a timely motion for post-conviction relief in which he asserted that his sixty-year sentence was unconstitutionally disproportionate. The trial court ordered the People to respond to the motion. The trial court heard argument on the motion and decided to prohibit Close from presenting evidence at an extended proportionality review. The trial court reasoned that although the sentence was lengthy, Close was convicted of multiple mandatory consecutive crimes of violence, which mandated the lengthy sentence. The trial court stated that it did not "feel that [the sentence] in any way violates the Constitution as far as disproportionate sentences are concerned."[2]

In affirming the trial court, the court of appeals emphasized that Close's sentence was the minimum allowable under the crime of violence statute: The court of appeals held that there was no authority to request a proportionality review in this case because the sentence imposed was the minimum allowable by statute. *See Close*, 22 P.3d at 939. As a result, the court of appeals affirmed the trial court's decision not to hold an extended proportionality review because

---

1. Close was originally sentenced to a total of seventy-five years of imprisonment. He appealed, and the court of appeals affirmed the judgment of conviction but remanded the case for re-sentencing. *See People v. Close*, 867 P.2d 82 (Colo.Ct.App.1993)("*Close I* "). Close petitioned this court for a writ of certiorari in *Close I*, which was denied. The matter then returned to the trial court for re-sentencing, at which time the trial court imposed the sixty-year sentence at issue in this appeal. Close appealed a second time, which is the matter before us today.

2. It is unclear as to whether the trial court believed that it had conducted an abbreviated proportionality review. At the hearing on Close's post-conviction motion, the court addressed his assertion of disproportionality in a cursory fashion, stating only that "[t]he court notes that despite a very lengthy sentence for a young man convicted of his first felony conviction, it's a minimum sentence. He was convicted of multiple mandatory consecutive violent crimes requiring a sentence of 60 years. The court doesn't feel that that in any way violates the Constitution as far as disproportionate sentences are concerned."

the trial court "could not impose a sentence that was less that the minimum mandated by law." *Id.* at 939. We granted certiorari.[3]

## II. Controlling Law

Our review of controlling United States Supreme Court and our own precedent in this section describes the constitutional proportionality principle embodied in the Eighth Amendment, articulates the parameters of which defendants are entitled to a proportionality review, and establishes that there are two procedural types of proportionality review, namely an abbreviated proportionality review and an extended proportionality review. Finally, our review of the case law in this section leads us to conclude that a separate proportionality review must be completed for each sentence imposed consecutively, rather than considering the cumulative total of such consecutive sentences.

### A. The Constitutional Principle of Proportionality

The principle of proportionality at issue in this case is grounded in the Eighth Amendment, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Very generally, the principle of proportionality has been described as encompassing the concept that "the punishment should fit the crime." Mary K. Woodburn, Comment: *Harmelin v. Michigan and Proportionality Review Under the Eighth Amendment*, 77 Iowa L. Rev. 1927, 1927 (1992).

### B. United States Supreme Court Precedent

That the proportionality principle includes a guarantee against disproportionate sentences in the context of capital punishment is well-recognized by the United States Supreme Court. *Id.; see also, e.g., Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). The Supreme Court has also extended the proportionality principle to

non-capital cases. While successful Eighth Amendment challenges in this area may be rare, preservation of proportionality review is essential to the guarantees provided by the Eighth Amendment. *See* Woodburn, *supra*, at 1927; *see also, e.g., Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

The contours of current Eighth Amendment proportionality review in non-capital cases have been defined predominantly by five United States Supreme Court cases. We review these cases in some detail because they frame our determination today that Close is entitled to an abbreviated proportionality review. We divide the Court's proportionality jurisprudence into three conceptual areas: First, the Court's initial contemporary discussion of the proportionality principle in *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); second, a trilogy of cases—*Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), and *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)—in which the Court continued to develop both the contours of the proportionality guarantee and the procedural requirements that underlie the proportionality principle; and, third, the most recent proclamation of the current parameters of the proportionality principle articulated in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). Our review reveals that the guarantee of proportionality included in the Eighth Amendment is a narrow one. Additionally, the Court's precedent directs that only an abbreviated proportionality review is required when a defendant challenges his sentence on proportionality grounds. It is only when an abbreviated proportionality review gives rise to the inference of gross disproportionality that an extended proportionality review is required.

The Court's first contemporary discussion of the proportionality principle occurred in

---

**3.** Specifically, we granted certiorari on the following issue:

Whether the court of appeals failed to follow controlling precedent and committed serious er-

ror when it held that the courts lack any authority to conduct a proportionality review of a defendant's sentence when the sentence imposed is the minimum authorized by the legislature.

*Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). The *Robinson* Court held unconstitutional a California law making it a criminal offense for a person to be addicted to the use of narcotics. In discussing the sentence imposed, the Court noted: "To be sure, imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual. But the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having the common cold." *Id.* at 667, 82 S.Ct. 1417. This statement recognized a proportionality principle within the Eighth Amendment, although the Court did not engage in a detailed analysis of the scope of the proportionality principle or the procedure for assessing the proportionality of a sentence. The concurrence articulated the principle more explicitly: "A punishment out of all proportion to the offense may bring it within the ban against 'cruel and unusual punishments.'" *Id.* at 676, 82 S.Ct. 1417 (Douglas, J., concurring).

After *Robinson,* the Court engaged in a more exhaustive and detailed development of the proportionality principle through a trilogy of cases decided in the 1980s. These three cases articulated the general constitutional guarantees of proportionality that continue to undergird the Court's most recent proclamation on the parameters of the proportionality principle. These three cases also developed procedural mechanisms to guide sentencing courts engaging in proportionality reviews.

In the first of these three cases, *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), the Court engaged in its first extensive analysis of the Eighth Amendment proportionality principle. The Court articulated the principles that legislatively mandated sentences are entitled to great deference by courts engaging in proportionality reviews and that any judicial proportionality review should be guided by objective principles. *Id.* at 274, 100 S.Ct. 1133. Rummel, who received a life sentence under the Texas recidivist statute, challenged that sentence as grossly disproportionate under the Eighth Amendment. The Texas statute provided for the imposition of a life sentence upon an individual's third non-capital felony conviction. *Id.* at 264, 100 S.Ct. 1133. Rummel's triggering offense was obtaining $120.75 by false pretenses, for which he received a life sentence under the recidivist statute. *Id.* at 266, 100 S.Ct. 1133. Rummel's underlying offenses were passing a forged check in the amount of $28.36, for which he received a four-year jail sentence, and fraudulent use of a credit card to obtain $80 worth of goods or services, for which he received a three-year jail sentence. *Id.* at 265–66, 100 S.Ct. 1133.

The Court affirmed the sentence. The Court explained that, although the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime, "successful challenges to the proportionality of particular sentences have been exceedingly rare" outside the context of capital cases. *Id.* at 271–72, 100 S.Ct. 1133. *Rummel* thus established the primacy of legislative decisions regarding sentencing while simultaneously recognizing both a guarantee of proportionality and that courts are authorized to engage in proportionality reviews that are guided by objective principles.

The second case in the trilogy, *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), applied the *Rummel* decision to uphold a sentence. *Davis* is significant because the Court did not prohibit the use of the procedural mechanism of a proportionality review to assess the constitutionality of sentences to a term of years: *Davis* involved neither an habitual criminal statute nor a mandatory life sentence. Defendant Davis was convicted of a drug-related offense and sentenced to forty years in prison (two, twenty year terms to run consecutively). *Id.* at 371, 102 S.Ct. 703. That Davis was not sentenced to life imprisonment or as an habitual criminal is significant in the present case because Close was not sentenced under an habitual criminal statute and did not receive a mandatory life sentence. The *Davis* Court reversed the Fourth Circuit's finding of disproportionality, finding that it failed to follow *Rummel.* Significantly, however, the *Davis* Court did not prohibit proportionality reviews in such circumstances. Rather, the

*Davis* Court stated that courts should be "reluctant" to engage in such reviews given the deference due to the legislature. *Davis,* 454 U.S. at 374, 102 S.Ct. 703. The *Davis* concurrence was more explicit about the appropriateness of completing a proportionality review in cases that do not involve an habitual criminal statute or a mandatory life sentence: "The *Rummel* court therefore did not reject the proportionality principle long settled by our cases." *Id.* at 377, 102 S.Ct. 703 (Powell, J., concurring).

The final case in the trilogy is *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *Solem's* significance rests in its articulation, for the first time, of a procedure courts should follow when completing a proportionality review. More specifically, *Solem* addressed the question of "whether the Eighth Amendment proscribes a life sentence without the possibility of parole for a seventh nonviolent felony." *Solem,* 463 U.S. at 279, 103 S.Ct. 3001. Helm's triggering offense was uttering a no account check for $100, for which he was sentenced to a life sentence without parole, which was the maximum penalty under South Dakota's habitual criminal statute. *Id.* at 281–82, 103 S.Ct. 3001. Helm's underlying offenses included six nonviolent felonies. *Id.* at 279, 103 S.Ct. 3001.

In holding Helm's sentence unconstitutionally disproportionate, the Court reviewed the principles of proportionality as articulated in its precedent. The Court concluded that "[t]here is no basis for the State's assertion that the general principle of proportionality does not apply to felony prison sentences," thus confirming that proportionality reviews may be extended beyond death sentences. *Id.* at 288, 103 S.Ct. 3001. Before enunciating a procedural mechanism by which to conduct a proportionality review, the *Solem* Court reviewed and emphasized the following principles as controlling proportionality reviews. First, the Court held that "as a matter of principle ... a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id.* at 290, 103 S.Ct. 3001. Second, the Court held that "[r]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as discretion that trial courts possess in sentencing convicted criminals." *Id.* Finally, the Court concluded that "no penalty is per se constitutional.... [A] single day in prison may be unconstitutional in some circumstances." *Id.* (citation omitted).

The *Solem* Court created an objective three-part procedure for sentencing courts to follow when conducting a proportionality review. Under *Solem's* first part, courts should consider two sub-parts, namely the gravity of the offense and the harshness of the penalty. Under *Solem's* second part, the court may compare the sentences imposed on other criminals who commit the same crime in the same jurisdiction. *Solem's* third part permits the court to compare the sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 290–92, 103 S.Ct. 3001.

The *Solem* Court articulated considerations that a court may take into account when assessing the gravity of an offense, namely the harm caused or threatened to the victim or to society and the culpability of the offender. *Id.* at 292, 103 S.Ct. 3001. In determining the harm to society, the *Solem* Court stated that several factors may be considered: the absolute magnitude of the crime; whether the crime was a lesser-included offense or a greater-included offense; whether the crime was an attempt or a completed act; and whether the offender was an accomplice or a principal. *Id.* at 293, 103 S.Ct. 3001.

With regard to the culpability of the offender, the *Solem* Court stated that intent and motive are relevant considerations. *Id.* The Court also stated that whether the offender's acts were negligent, reckless, knowing, intentional, or malicious is also a relevant consideration. *Id.*

Applying all of these principles, the *Solem* Court found that Helm's sentence was unconstitutionally disproportionate.

The third and final area of Supreme Court proportionality jurisprudence that we address is the Court's most recent pronounce-

ment on the proportionality principle in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *Harmelin* is significant because it brings into some question the scope of *Solem's* holding and continued viability. *Harmelin* is an opinion without a majority holding. However, *Harmelin* preserves the existence of a proportionality guarantee as well as the presence of procedural mechanisms through which to engage in proportionality reviews. *Harmelin's* holding narrows *Solem* by declaring that the Eighth Amendment includes only a narrow proportionality principle and by concluding that *Solem* did not mandate a rigid three-part proportionality review procedure. Instead, *Harmelin* established that only *Solem's* first part, namely a consideration of the two sub-parts of (1) the gravity of the crime and (2) the harshness of the penalty, is required of courts engaging in a proportionality review. This type of proportionality review has become known as an "abbreviated" proportionality review. *Harmelin* further established that consideration of the second two parts of *Solem's* proportionality review procedure need not be utilized unless an inference of gross disproportionality is raised by the abbreviated proportionality review. The utilization of the second two *Solem* factors upon such inference of gross disproportionality has become known as an "extended" proportionality review.

*Harmelin* involved a mandatory life sentence, but not an habitual criminal statute. Defendant Harmelin was convicted of possessing 672 grams of cocaine and sentenced to life imprisonment without the possibility of parole under a Michigan statute. *Harmelin,* 501 U.S. at 961, 111 S.Ct. 2680. He challenged his sentence on two grounds. He first argued that his sentence was unconstitutionally disproportionate. He also argued that the mandatory nature of the sentence, which did not take into account mitigating factors, rendered it unconstitutional. The

Court upheld the sentence. Three Justices—Justices Kennedy, O'Connor, and Souter—concurred in the judgment, holding that the Eighth Amendment does contain a proportionality principle, but that principle was not violated in this instance. *Id.* at 996–1009, 111 S.Ct. 2680. Four Justices—Justices White, Blackmun, Stevens, and Marshall—dissented. The dissent emphasized the vitality of the proportionality principle embodied in the Eighth Amendment and expressed that *Solem* was correctly decided and should continue to represent the Court's position on proportionality. *Harmelin,* 501 U.S. at 1009, 111 S.Ct. 2680 (White, J., dissenting)(joined by Marshall and Stevens, JJ.); 501 U.S. at 1027, 111 S.Ct. 2680 (Marshall, J., dissenting); 501 U.S. at 1028, 111 S.Ct. 2680 (Stevens, J., dissenting) (joined by Blackmun, J.). Justice Kennedy's concurrence is widely recognized as "the rule of *Harmelin,*" and thus the only controlling part of the opinion, because it resolved the case on its narrowest grounds and garnered the support of the largest number of justices.[4] *See Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)(citing *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). As noted by the Tenth Circuit:

> Seven members of the *Harmelin* Court (Kennedy, O'Connor, and Souter, JJ., concurring, and White Blackmun, Stevens, and Marshall, JJ., dissenting) supported some Eighth Amendment guarantee against disproportionate sentences.... The controlling position is the one 'taken by those Members who concurred in the judgments on the narrowest grounds.' Thus, Justice Kennedy's opinion controls because it both retains proportionality and narrows *Solem.*

*Hawkins v. Hargett,* 200 F.3d 1279, 1282 (10th Cir.1999); *see also, e.g., United States v. Gonzales,* 121 F.3d 928 (5th Cir.1997).

Justice Kennedy's concurrence narrowed *Solem* by holding that only "grossly dispro-

---

4. Two Justices—Justices Scalia and Rehnquist—held that *"Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Harmelin,* 501 U.S. at 965, 111 S.Ct. 2680. Five Justices—Justices Scalia, Rehnquist, O'Connor, Kennedy, and Souter—held that the sen-

tence was constitutional by rejecting Harmelin's claim that the sentence became unconstitutional because it was mandatory and did not take into account mitigating factors. *Id.* at 994–96, 111 S.Ct. 2680.

portionate" sentences are unconstitutional; the Eighth Amendment encompasses only a narrow proportionality principle. *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680. Justice Kennedy articulated the following four principles in narrowing *Solem:* (1) the "fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts'"; (2) there are a variety of legitimate, constitutional, penological schemes that may be adopted by legislatures; (3) the nature of our federal system, namely that "state sentencing schemes may embody different penological assumptions, making interstate comparison of sentences a difficult and imperfect exercise"; and (4) the requirement that proportionality review be guided by objective factors. *Harmelin,* 501 U.S. at 998–1000, 111 S.Ct. 2680 (Kennedy, J., concurring). These four principles informed a final one: "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring).

Specifically, Justice Kennedy's concurrence stated that *Solem* did not announce a rigid three-part proportionality review procedure. *Id.* at 1004, 111 S.Ct. 2680. Instead, Justice Kennedy opined that only the first *Solem* inquiry—comparing the two sub-parts of the gravity of the offense and the harshness of the punishment—is required when a court engages in a proportionality review. Thus, Justice Kennedy's concurrence holds that only an abbreviated proportionality review is required when a court is reviewing a sentence. Only when this abbreviated proportionality review gives rise to an "inference of gross disproportionality" should a court conduct an extended proportionality review, which includes the second and third factors of the *Solem* proportionality review procedure. *Id.* at 1004–06, 111 S.Ct. 2680.

In sum, United States Supreme Court precedent establishes three principles underlying proportionality reviews. These three principles answer the questions of who is entitled to a proportionality review, what is at issue in a proportionality review, and what the procedures are in a proportionality review. First, proportionality reviews are not specifically limited to life sentences or to sentences imposed pursuant to habitual criminal statutes; proportionality reviews are proper to review sentences to a term of years. *See generally Davis,* 454 U.S. at 377, 102 S.Ct. 703 (Powell, J., concurring). Second, only "grossly disproportionate" sentences are prohibited by the Eighth Amendment's proportionality principle. *See Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680. Third, there are two types of proportionality review: an abbreviated proportionality review and an extended proportionality review. Reviewing courts must only complete an abbreviated proportionality review. If, and only if, that abbreviated proportionality review gives rise to an inference of gross disproportionality does a reviewing court need to engage in an extended proportionality review, which involves intra-jurisdictional and inter-jurisdictional comparisons as articulated in *Solem. Id.* at 1004–05, 111 S.Ct. 2680.

## C. Colorado Precedent

Our review of Colorado precedent indicates that we have closely followed the United States Supreme Court's proportionality principle; the progression of our proportionality jurisprudence mirrors that of the Supreme Court. Our discussion of Colorado precedent in this section is also significant because it reveals that we have applied the principles established by the Supreme Court to articulate specific conclusions regarding proportionality reviews in Colorado. In particular, our cases have defined certain crimes as grave or serious for purposes of proportionality review. Defining certain crimes as grave or serious results in a very high likelihood that a sentence will be upheld as constitutionally proportionate, thereby usually eliminating the need for an extended proportionality review in circumstances involving grave or serious crimes as carved out and defined in our precedent.

Our cases reveal that, to date, we have only engaged in proportionality reviews for sentences under the Colorado habitual criminal statute or for mandatory life sentences.

We first addressed proportionality in *People v. Hernandez*, 686 P.2d 1325 (Colo.1984), in which we held, pursuant to *Solem*, that Colorado courts are compelled to grant proportionality reviews when a life sentence is imposed under the habitual criminal statute, sections 16–13–101 to –103, 6 C.R.S. (2001).

In *Alvarez v. People*, 797 P.2d 37 (Colo. 1990), we held that only the procedural mechanism of the abbreviated proportionality review is required when reviewing a sentence imposed under both the habitual criminal statute and the crime of violence statute. The *Alvarez* court relied on *Solem, Rummel,* and *Hernandez* to uphold the sentence of life imprisonment with the possibility of parole in forty years. To support its holding that a defendant was entitled to an abbreviated proportionality review, the *Alvarez* court stated that "[t]he provisions of the habitual criminal act create a unique possibility that a defendant will receive a life sentence which is not proportionate to the crime for which the defendant has been convicted." *Id.* at 40.

*People v. Gaskins*, 825 P.2d 30 (Colo.1992), continued to develop the parameters of proportionality reviews in Colorado by further expanding upon the procedural mechanism of the abbreviated proportionality review, upon the concept of grave or serious offenses, and by explaining the role of appellate courts in reviewing sentencing courts' determinations regarding proportionality. The *Gaskins* court held that only an abbreviated proportionality review is necessary when (1) the crimes supporting an habitual criminal statute sentence include "grave or serious" offenses, and (2) the defendant will become eligible for parole. *Gaskins*, 825 P.2d at 36. *Gaskins* thus adopted the "rule of *Harmelin*" articulated in Justice Kennedy's concurrence. The *Gaskins* court defined the two sub-parts of an abbreviated proportionality review as "scrutiny of the offenses in question to determine whether in combination they are so lacking in gravity or seriousness so as to suggest that a life sentence is constitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole." *Id.* If the abbreviated proportionality review creates an inference of disproportionality, *Gaskins* mandates that a reviewing court move on and utilize the procedural mechanism of the extended proportionality review. *Id.*

*Gaskins* adopted *Solem's* approach to determining what constitutes a "grave or serious" crime, namely by considering the harm caused or threatened to the victim or to society and the culpability of the offender. *Id.* (citing *Solem*, 463 U.S. at 292, 103 S.Ct. 3001). However, *Gaskins* noted that some crimes had previously been determined to be "grave or serious" for purposes of conducting a proportionality review under Colorado law. Accordingly, for those crimes determined to be grave or serious in Colorado, *Solem's* consideration of the harm caused or threatened to the victim or to society and the culpability of the offender becomes unnecessary and a court may proceed directly to consider the second sub-part of an abbreviated proportionality review, namely the harshness of the penalty. Specifically, the *Gaskins* court stated that the crimes of aggravated robbery, robbery, burglary, accessory to first-degree murder, and narcotic-related crimes are all "grave or serious" for the purposes of proportionality review. *Gaskins*, 825 P.2d at 37.

Finally, *Gaskins* addressed the role and function of appellate courts in reviewing lower court decisions regarding proportionality. *Gaskins* held that in cases in which an extended proportionality review is unnecessary, "an appellate court is as well positioned as a trial court to conduct a proportionality review. In such circumstances, there is no need or justification for remand." *Id.* at 37–38.

In *People v. Smith*, 848 P.2d 365 (Colo. 1993), we extended the requirement of an abbreviated proportionality review to a non-habitual criminal statute case. The defendant was convicted of first-degree murder and received a mandatory sentence of life with the possibility of parole in forty years. *Smith*, 848 P.2d at 366. The *Smith* court noted that because this was a non-habitual criminal statute case, *Solem* was "not readily applicable." *Id.* at 374. Instead of relying on *Solem*, the *Smith* court relied on *Harmelin*: "In analyzing the proportionality issue in the context of a non-habitual offender

case, we agree with Justice Kennedy's conclusion in *Harmelin* that a narrow proportionality principle exists under the Eighth Amendment." *Id.*

■ In sum, our precedent establishes the following. We have closely followed the United States Supreme Court in developing our own principles to guide proportionality reviews. With regard to the procedural mechanisms for proportionality reviews, our precedent reflects that Justice Kennedy's "rule of *Harmelin*" has been adopted by Colorado. This rule directs that only an abbreviated form of proportionality review, consisting of a comparison of the two sub-parts of the gravity of the offense and the harshness of the penalty, is required when a defendant, in either an habitual or a non-habitual offender case, challenges the constitutionality of a life sentence.

■ Additionally, our precedent has carved out some Colorado-specific principles for proportionality reviews, namely articulating that certain Colorado crimes are grave or serious for purposes of proportionality review. Specifically, we have determined that the crimes of burglary, attempted burglary, conspiracy to commit burglary, felony menacing, possession or sale of narcotic drugs, aggravated robbery, robbery, and accessory to first-degree murder are grave or serious. The result of our delineation of certain crimes as grave or serious is that when these crimes are involved a sentencing court may proceed directly to the second sub-part of an abbreviated proportionality review, a consideration of the harshness of the penalty. Because we have determined that certain crimes are grave or serious, it is highly likely that the legislatively mandated sentence for these crimes will be constitutionally proportionate in nearly every instance. Thus, the ability to proceed to the second sub-part of the abbreviated proportionality review, namely the harshness of the penalty, when a grave or serious crime is involved results in a

near-certain upholding of the sentence. The delineation of certain crimes as grave or serious, then, renders a sentence nearly impervious to attack on proportionality grounds. Accordingly, in almost all cases where a life sentence is imposed under the habitual criminal statute for a triggering crime that is grave or serious, only an abbreviated proportionality review will be required; only in rare cases will the felonies supporting a life sentence for a grave or serious crime be so lacking in inherent gravity that an extended proportionality review is required.

### D. Proportionality Review and Consecutive Sentences [5]

■ Finally, we must address the treatment of consecutive sentences in proportionality reviews. The issue presented is whether a reviewing court must look separately at each sentence imposed and engage in a proportionality review of each of those sentences, or whether a reviewing court must look at the cumulative impact of all of the sentences and engage in a proportionality review of that cumulative sentence. We find the reasoning of some lower federal court cases holding that a proportionality review must be completed for each separate sentence to be persuasive. We thus hold that an abbreviated proportionality review must be completed for each of Close's crime of violence statute sentences and that the cumulative sixty-year sentence imposed under that statute is not subject to proportionality review.

The United States Supreme Court has indicated that each sentence should be considered separately for purposes of proportionality reviews, although that Court has not explicitly addressed the issue. In the early case of *O'Neil v. Vermont*, 144 U.S. 323, 12 S.Ct. 693, 36 L.Ed. 450 (1892), the Court noted that the severity of a defendant's punishment may result from the number of crimes he has committed, which does not

---

5. In its opinion, the court of appeals states that Close only "contends that disproportionality arises here, regarding the sentence as a whole...." *Close*, 22 P.3d at 938. However, the court of appeals' reasoning and conclusion that there is "no authority" to seek a proportionality review of a minimum sentence mandated by statute is applicable to both the cumulative sentence and to each individual sentence. Accordingly, we address the issue of proportionality review for consecutive sentences.

raise proportionality concerns. While not the basis of its decision in *O'Neil*, the Court stated:

> "The punishment imposed by statute for the offence cannot be said to be excessive or oppressive. If he has subjected himself to a severe penalty, it is simply because he has committed a great many such offences. It would be scarcely competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary, on the ground that he had committed so many burglaries that, if punishment for each were inflicting on him, he might be kept in prison for life. The mere fact that cumulative punishments may be imposed for distinct offences in the same prosecution is not material upon this question."

*O'Neil*, 144 U.S. at 331, 12 S.Ct. 693 (quoting *O'Neil v. State*, 58 Vt. 140, 2 A. 586, 593 (1886)). The reasoning underlying this statement, that a defendant who commits numerous crimes may be punished for each separate crime, supports our conclusion that an abbreviated proportionality review must be completed for each of Close's crime of violence statute sentences.

More recently, several lower federal courts have similarly held that for purposes of proportionality review each sentence imposed must be considered separately. Again, we are persuaded by their reasoning. In *United States v. Schell*, 692 F.2d 672 (10th Cir.1982), the defendant argued that the imposition of these sentences was cruel and unusual punishment under the Eighth Amendment. The court rejected this argument, reasoning that

> [t]aken to its extreme, it would require us to find that virtually any sentence, however short, becomes cruel and unusual punishment when the defendant was already scheduled to serve lengthy sentences for prior convictions. The Eighth Amendment does not prohibit a state from punishing defendants for the crimes they commit; the amendment prohibits a sentence only if it is grossly disproportionate to the severity of the crime.

*Schell*, 692 F.2d at 675. Although the Schell court did nt explicitly hold that each of the two, ten-year consecutive sentences imposed must be considered separately for proportionality review purposes, the abovecited portion of the holding implicitly supports such a conclusion. We agree with the *Schell* court. Because each sentence represents a separate punishment for a distinct and separate crime, it follows that a separate proportionality review should be completed for each sentence.

The court in *United States v. Aiello*, 864 F.2d 257 (2d Cir.1988), reached the same conclusion that separate sentences must be considered separately for proportionality review purposes. The *Aiello* court rejected the defendant's argument that his sentence to life imprisonment without parole plus 140 consecutive years was grossly disproportionate because "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." *Aiello*, 864 F.2d at 265; *see also, e.g., Hawkins*, 200 F.3d at 1285, n. 5 ("The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes.").

If a proportionality review were to consider the cumulative effect of all of the sentences imposed, the result would be the possibility that a defendant could generate an Eighth Amendment disproportionality claim simply because that defendant had engaged in repeated criminal activity. *See generally Pearson v. Ramos*, 237 F.3d 881 (7th Cir. 2001) ("In any event, it is wrong to treat stacked sanctions as a single sanction. To do so produces the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim.").

Finally, as correctly noted by a panel of our court of appeals, the *Solem* court made clear that the overriding issue for proportionality review is whether the sentence imposed for the offense of which the defendant has been convicted is constitutionally disproportionate. *People v. Cabral*, 878 P.2d 1, 2 (Colo.Ct.App.1993). As such, ("[I]t would render the review process nearly impossible of rational accomplishment if the courts were required to determine whether the commission of multiple offenses, each of which might vary considerably in nature and, hence, in degree of seriousness, collectively warranted

the imposition of the total of the various sentences imposed.").

■ Based on the reasoning in these cases, we hold that an abbreviated proportionality review is required, upon request, for each separate sentence imposed upon a defendant under the crime of violence statute. As a result, Close's cumulative sixty-year crime of violence statute sentence is not reviewable in the aggregate.[6] Instead, each separate crime of violence statute sentence is subject to a separate abbreviated proportionality review.

### III. Application of Controlling Precedent to This Case

Given the current status of United States Supreme Court precedent and our own precedent, we find that Close was entitled to an abbreviated proportionality review of the sentences imposed under the crime of violence statute. Because, pursuant to that abbreviated proportionality review, an inference of gross disproportionality was not raised, an extended proportionality review is not required and the sentences are upheld.

■ Although Close was neither adjudicated an habitual criminal nor sentenced to mandatory life imprisonment, we hold that extending the requirement of a proportionality review beyond these two situations to the sentences imposed in this case under the crime of violence statute is necessary. *See, e.g., Hargett*, 200 F.3d at 1285 (conducting a proportionality review of a 100-year sentence, then upholding that sentence, in a non-habitual criminal statute, non-mandatory life sentence case). Our conclusion that an abbreviated proportionality review is required in this context, namely upon a defendant's request in a crime of violence statute case, which is neither an habitual criminal case nor a case involving a mandatory life sentence, is supported by the same reasoning underlying our previous conclusion that a proportionality review is proper in an habitual criminal statute case: Both the habitual criminal statute and the crime of violence statute are unique in that they increase punishment based on statutorily mandated provisions that strip the sentencing court of any discretion in sentencing. In those instances, not presented here, in which a sentencing court has discretion in sentencing, it can be "presumed that the court has engaged in a consideration of the nature of the offenses similar to that required by an abbreviated proportionality review." *Cabral*, 878 P.2d at 3. Such discretion, and thus such implicit proportionality review, is absent in this case, in which the crime of violence statute required the sentencing court to impose consecutive sentences upon Close. *See* § 16–11–309(1)(a), 6 C.R.S. (2001) ("A person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that sentences are served consecutively rather than concurrently."). Accordingly, the sentencing court did not have an opportunity to implicitly assess the proportionality of the sentences imposed on Close absent a separate abbreviated proportionality review.

Our conclusion that an abbreviated proportionality review is required in this case may be reached notwithstanding the fact that the sentences imposed were the minimum mandated by statute. *See, e.g., Davis*, 454 U.S. at 377, 102 S.Ct. 703 (although the limits of a prison sentence are "normally a matter of legislative prerogative ... our system of justice always has recognized that appellate courts *do* have a responsibility ... not to shut their eyes to grossly disproportionate sentences that are manifestly unjust.") (Powell, J., concurring); *Andrade v. Attorney Gen. of Cal.*, 270 F.3d 743, 758, n. 19 (9th Cir.2001)(proportionality review appropriate when defendant sentenced to mandatory consecutive sentence under California's Three

---

6. Our holding that consecutive crime of violence statute sentences are not reviewable in the aggregate in a proportionality review does not preclude an Eighth amendment challenge to that cumulative sentence under the "shocks the conscience" standard, which is also referred to as a cruel and unusual standard. See generally *People v. Fulmer*, 185 Colo. 366, 368, 524 P.2d 606, 607 (Colo. 1974). This standard was the basis of the decision in *Kenimer v. State*, 59 S.E.2d 296 (Ga. 150), which considered the defendant's sentence in the aggregate and held that it was cruel and unusual punishment. Because a proportionality review and a shocks the conscience review are distinct inquiries, we find Kenimer inapposite and Close's reliance on it misplaced.

Strikes law); [7] *People v. Hayes*, 923 P.2d 221 (Colo.Ct.App.1995) (recognizing right to proportionality review in a non-habitual criminal case, upholding sentence of twenty-four years imprisonment imposed pursuant to the crime of violence statute); *see also, e.g., Solem*, 463 U.S at 290, 103 S.Ct. 3001 ("But no penalty is per se constitutional."); *Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (recognizing the possibility of proportionality review in a non-habitual criminal statute, non-mandatory life sentence case).

In short, the trial court did have authority to conduct an abbreviated proportionality review in this case. The court of appeals thus incorrectly concluded that "there is no authority to seek a proportionality review" in this case. *See, e.g., United States v. Baker*, 197 F.3d 211, 217 (6th Cir.1999) (acknowledging narrow proportionality principle by engaging in abbreviated proportionality review to uphold a forty-six-month sentence for possession of a firearm while under a domestic violence restraining order); *United States v. Easter*, 981 F.2d 1549, 1556 (10th Cir.1992) (recognizing a limited proportionality principle in a non-habitual criminal, non-mandatory life sentence case and upholding a 235-month sentence for a drug-related offense).[8]

Our determination that Close is entitled to an abbreviated proportionality review does not end our inquiry, however. We must also determine whether that abbreviated proportionality review gives rise to an inference of gross disproportionality. If so, Close becomes entitled to an extended proportionality review. *Harmelin*, 501 U.S at 1003–05, 111 S.Ct. 2680; *Alvarez*, 797 P.2d at 41. We have held that, for purposes of conducting an abbreviated proportionality review, a remand is rarely necessary. *Gaskins*, 825 P.2d at 37–38. A review of the record in this case reveals that we need not remand for an abbreviated proportionality review but instead may conduct such review at this stage in the proceeding.

Close was convicted of criminal mischief, first-degree criminal trespass, misdemeanor theft, conspiracy to commit criminal mischief and theft, and of conspiracy to commit ethnic intimidation. He was also convicted of three counts each of aggravated robbery and attempted aggravated robbery and six counts each of second-degree assault and ethnic intimidation. The trial court sentenced Close under the crime of violence statute to cumulative minimum sentences totaling sixty years of imprisonment: Close was sentenced to five years for each of the six counts of second-degree assault, to run consecutively under the crime of violence statute, for a total of thirty years for the assault convictions. Close was also sentenced to ten years for each of the three counts of aggravated robbery, to run consecutively under the crime of violence statute, for a total of thirty years for the aggravated robbery convictions. Each of these sentences was the minimum under the crime of violence statute, section 16–11–309, 6 C.R.S. (2001). The crime of violence statute sentences for all of the other counts were to run concurrently, creating a sixty-year sentence on all convictions.

■ Upon completion of an abbreviated proportionality review, we find that each sentence is constitutionally proportionate. Again, we conduct our abbreviated proportionality review for each crime of violence

---

**7.** The United States Supreme Court granted certiorari in the *Andrade* case on April 1, 2002. *See Lockyer v. Andrade*, —— U.S. ——, 122 S.Ct. 1434, 152 L.Ed.2d 379 (U.S.2002). Although the Ninth Circuit's holding may not represent the final conclusion on the issue of proportionality review, we consider its analysis of controlling proportionality principles to be accurate and find its reasoning regarding proportionality review of a legislatively mandated sentence persuasive.

**8.** Our decision today is in conflict with two decisions of the court of appeals. Specifically, two court of appeals' decisions have held that a proportionality review is not required in some circumstances. *See, e.g., People v. Bolton*, 859 P.2d 311 (Colo.Ct.App.1993) (a non-habitual criminal case in which defendant received a sentence of 172 years and the court of appeals concluded that a proportionality review was not required: "We are not aware of any Colorado authority which holds that a defendant given consecutive sentences that would exceed his anticipated life span is … entitled to a proportionality review."); *People v. Herrera*, 728 P.2d 366 (Colo.Ct.App.1986) (the court of appeals affirmed the trial court's determination that no proportionality review was required in an habitual criminal statute case). To the extent that these cases are inconsistent with this opinion, they are overruled.

sentence separately. *Hawkins*, 200 F.3d at 1285 n. 5; *Cabral*, 878 P.2d at 2–3. The abbreviated proportionality review consists of the two sub-parts of scrutiny of the gravity or seriousness of the offense in relation to the harshness of the sentence imposed in order to determine whether the sentence gives rise to an inference of gross disproportionality. *Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680; *Gaskins*, 825 P.2d at 36. Given the requirement that we give great deference to legislatively mandated sentencing schemes, and given the nature of Close's crimes and the sentences imposed, we find no inference of gross disproportionality.

[11] We have previously held that aggravated robbery is a "grave or serious" offense. *See, e.g., Gaskins*, 825 P.2d at 37. Accordingly, we do not need to weigh the considerations articulated by the *Solem* Court for determining whether the offense of aggravated robbery is grave or serious. Instead, we can simply proceed to consider the second sub-part in an abbreviated proportionality review, namely the penalty of ten years that was imposed for each conviction. We find that the ten-year sentence imposed for each separate conviction of aggravated robbery does not give rise to an inference of gross disproportionality.

We have not previously held that the crime of assault is grave or serious for proportionality review purposes. Accordingly, to complete the first sub-part of the abbreviated proportionality review we thus utilize the considerations articulated in *Solem* to consider, under the facts of this case, whether the assault convictions are grave or serious. We conclude that they are. Close and his associates, armed with sticks and bats, surrounded a group of students and assaulted the students until the victims managed to escape. The first *Solem* consideration is the harm caused or threatened to the victim or to society. Here, Close's acts caused actual harm to the victims, including the infliction of a swollen nose, facial and head lacerations, and bruises. Two of the victims required stitches. The second *Solem* consideration is the culpability of the offender. The evidence at trial established that Close was armed with a stick during the assaults, clearly indicating his culpability in the assaults. These facts, when considered pursuant to *Solem*, lead us to conclude that Close's assault convictions were grave and serious for the purpose of completing an abbreviated proportionality review.

Having determined that each assault conviction was a grave and serious one, we proceed to consider the penalty. We cannot say that the legislatively mandated sentence of five years that the trial court imposed for each assault conviction was so harsh as to give rise to an inference of gross disproportionality.[9]

Accordingly, when considered separately, none of Close's crime of violence sentences gives rise to an inference of gross disproportionality. As a result, the sentences must be upheld and an extended proportionality review is unnecessary.

## IV. Conclusion

Today we conclude that a criminal defendant who is sentenced under the crime of violence statute is entitled, upon request, to an abbreviated proportionality review. If, and only if, that abbreviated proportionality review gives rise to an inference of gross disproportionality will an extended proportionality review be required. Given the gravity and seriousness of the crimes included in the crime of violence statute, the necessity of conducting an extended proportionality review, and thus a successful challenge to a

---

9. We do not complete an abbreviated proportionality review of the sentences that Close received for his convictions of criminal mischief, first-degree criminal trespass, theft, conspiracy to commit criminal mischief, six counts of ethnic intimidation, and conspiracy to commit second-degree assault and ethnic intimidation because these sentences were not imposed pursuant to the crime of violence statute. Close did not appeal based on these sentences, which were all imposed concurrently, but instead only appealed on the issue of the proportionality of the sentences, which total sixty years, imposed under the crime of violence statute. Accordingly, we need not review the sentences imposed that were not part of Close's crime of violence statute sentences. We address only the issue before us, namely whether Close was entitled to an abbreviated proportionality review of his crime of violence statute sentences.

sentence imposed under that statute, will be "exceedingly rare." *Rummel,* 445 U.S. at 272, 100 S.Ct. 1133. Accordingly, we disapprove the holding of the trial court and court of appeals that such review was not authorized. Considering the facts of this case, however, we hold that the sentences imposed are not grossly disproportionate and thus affirm the judgments and sentences imposed.